IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL ALLEN BYRAM,<br>Administrator of the Estate<br>and Natural Father of<br>JOHNATHON BYRAM, deceased, | :<br>:<br>:<br>: | |
| Plaintiff | : | CIVIL ACTION -- LAW |
| vs. | : | |
| | : | **JURY TRIAL DEMANDED** |
| MARK T. RENEHAN,<br>THOMAS (a/k/a TODD) S. RENEHAN,<br>BETH L. RENEHAN, JAMES<br>RENEHAN, PATRICIA RENEHAN<br>and<br>JOSEPH CONNORS, JR. | :<br>:<br>:<br>:<br>:<br>: | |
| Defendants | : | No. 3:10-CV-593 |

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT MARK RENEHAN'S MOTION TO STAY CIVIL PROCEEDINGS PENDING RESOLUTION OF THE CRIMINAL PROCEEDINGS**

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiff's decedent, their 19 year old son, went to stay with his college friend, Mark Renehan, at Mark's father's and stepmother's, Todd and Beth Renehan, home over the 4th of July. Mark Renehan's aunt and uncle, James and Patricia Renehan, had thrown a 4th of July party at their home at which time they served alcohol to Johnathon Byram and Joseph Connors (another minor) as well as Mark Renehan continuously over a six hour period. Sometime during the early morning hour of July 5th, after approximately six hours of drinking, Mark Renehan and Joseph Connors put the intoxicated and incapacitated Johnathon Byram into an unregistered RUV owned by

Mark's parents.  On a roadway in between the two homes the vehicle flipped over ejecting Johnathon from the vehicle to his death.  Following this, Todd and Beth Renehan apparently moved Johnathon's dead body from the side of the road, as well as the RUV which was illegally being driven on the roadway, back to their home.  They put the RUV in the garage, told Mark Renehan and Joesph Connors to take showers and called 911.  Additionally Todd Renehan for an inexplicable reason put a tube into Johnathon's mouth and shoved it down his throat tearing apart his esophagus.

Plaintiff's Complaint was filed on March 17, 2010 and service on all of the parties was completed on March 22, 2010.  Plaintiff's counsel first requested deposition dates from the Defendants in writing on June 4, 2010.  By way of further response, the Court had advised all counsel in conferences held on June 28, 2010 and July 7, 2010 after hearing from all parties' counsel that depositions should move forward.  Subsequent to the Court's oral instructions, the Defendant filed this Motion.

The defendant Mark Rennnehan thru counsel has also been performing discovery.  The Defendant, Mark Renehan, himself through counsel has been issuing discovery.  On May 3, 2010 a Subpoena was issued to the Pennsylvania State Police by Attorney Wilson; and on July 13, 2010 Subpoenas were issued to Wayne County Coroner, Damascus Township Volunteer Ambulance, Liberty High School, Allegheny College of Maryland, Frostburg State University and Hagerstown Community College by Attorney Dodd-o, again counsel for Mark Renehan.  The Defendants are intentionally delaying Plaintiff's discovery while pursuing their own.

## II. ISSUE

**WHETHER THE DEFENDANTS ARE ENTITLED TO A STAY OF THE PROCEEDINGS.**

**Suggested Answer:  No**

## III. ARGUMENT

In a civil trial, a party's invocation of his 5th Amendment privilege does not take place in a vacuum; the rights of the other litigants are entitled to consideration as well. SEC v. Graystone Nash, Inc., 25 F.3d 187, 191 (3rd Cir. 1994).  When an individual invokes his 5th Amendment privilege, "the court must carefully balance the interests of the party claiming protection against self-incrimination *and the adversary's entitlement to equitable treatment*."  Id. At 192 (emphasis added).  The detriment to the party asserting the 5th Amendment privilege in response to discovery requests should be no more than is "necessary to prevent unfair and unnecessary prejudice to the other side." Id.; see also McMullen v. Bay Ship Management, 335 F.3d 215 (3rd Cir. 2003). Moreover, because exercise of 5th Amendment rights should not be made "unnecessarily costly," courts should seek out ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege.  U.S. v. Certain Real Property and Premises Known as 4003-4005 5th Ave., Brooklyn, NY, 55 F.3d 78 (2nd Cir. 1995) (hereinafter "U.S. v. Certain Real Property").  Further, it is permissible to draw adverse inferences against parties to

a civil actions when they refuse to testify.  Baxter v. Palmigiano, 425 U.S. 308, 318 (1976).

In Graystone Nash, Inc., the plaintiffs filed and were granted a motion in the district court barring defendants from offering any evidence to contest plaintiff's motion for summary judgment after the defendants, relying on their 5th Amendment privilege, refused to answer questions during their discovery depositions.  In response, the Third Circuit remanded the case for further consideration of a remedial order balancing the equities of the parties.  In doing so, the Third Circuit held that although an individual's invocation of the 5th Amendment may be proper, the rights of the other litigant must likewise be considered.  Graystone Nash, Inc., 25 F.3d at 191.  Furthermore, in propounding their aforementioned balancing test, the Third Circuit stated that it was "apparent that the effects of an invocation of the privilege against self-incrimination will have in a civil suit depends to a large extent on the circumstances of the particular litigation" and that the "appropriate remedy is within the discretion of the trial court." Id. at 192.  This notion was especially relevant in the Third Circuit's decision to reverse the district court's decision, as the plaintiff in that case, unlike the plaintiff in the case at hand, was a Government agency, and the defendants in that case, unlike the defendants in the case at hand, were pro se litigants, and that in such cases, "special consideration must be given to the plight of the party asserting the 5th Amendment." Id. at 193-94.

Further, in U.S. v. Certain Real Property, the Second Circuit held:

> [B]ecause *all* parties-those who invoke the Fifth Amendment and those who oppose them- should be afforded every reasonable opportunity to litigate a civil case fully and because exercise of the Fifth Amendment rights should not be made unnecessarily costly, courts, upon an appropriate motion, should seek out ways that further the goal of permitting as much testimony as possible to be presented in civil litigation, despite the assertion of the privilege.

U.S. v. Certain Real Property, 55 F.3d at 83-84 (emphasis added).

In doing so, the Second Circuit held that courts should explore all possible measures to select a means that "strikes a fair balance" and "accommodates both parties." Id. at 84.  Here, the Second Circuit stated, courts should "give due consideration to the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to opposing parties." U.S. v. Certain Real Property, 55 F.3d at 84.

As such, when employing the Graystone Nash, Inc. balancing test to the case at hand and taking all relevant factors into account, it is evident that staying of Defendant's deposition will unduly burden the Plaintiff with the unfair and unnecessary prejudice that the balancing test is designed to prevent.  As the Third Circuit stated in McMullen, "[P]rejudice to the other party must be minimized and equitable resolution adopted." McMullen, 335 F.3d at 218.  However, if this Honorable Court were to stay Defendant's depositions until his criminal trial is resolved, prejudice to the Plaintiff would be magnified in a number of ways.  First, the delay will most notably prejudice the Plaintiff in their endeavor to locate all possible Defendants within the two year statute of limitations, as well as their effort to ascertain all possible claims against the Defendant(s) within the two year statute of limitations.  Moreover, it presents the risk of destruction of evidence in that the delay will on further "cloud" and "blur" the

memory of not only the Defendant, but also the relevant witnesses. What is more, the staying of Defendant's deposition presents a risk of further violation in that will clearly violate the Plaintiff's constitutional right at stake: the right to procedural due process, as guaranteed under the Bill of Rights.

Additionally, it should be noted that although Defendant has repeatedly refused to submit to a deposition, he has nonetheless submitted to a tape recorded statement to his own insurance company claiming his innocence. As such, to state that allowing the civil action to proceed and the depositions to be taken presents the Defendant with a "Hobson's Choice" is simply not true; if he was telling the truth to his insurance company and is innocent, as the Defendant's response to Plaintiff's complaint suggests, then requiring Defendant to submit to a deposition should not affect his 5th Amendment rights.

Accordingly, when taking all the circumstances into account, as is suggested in Graystone Nash, Inc., it is apparent that the proper course of action is to allow the civil actions, specifically the taking of Defendant's deposition, to proceed. First, unlike the Defendants in Graystone Nash, Inc. or McMullen, whose 5th Amendment protection was upheld because they faced the harsh prospect of having a summary judgment motion granted against them due to invoking of their 5th Amendment privilege, the Defendant here is simply facing the prospect of being deposed. Further, when the seemingly minimal task of being deposed and claiming one's innocence, as the Defendants suggest, is balanced against the Plaintiff's possible prospects of losing vital evidence, not being able to properly litigate the case, having their case unreasonably delayed

even further, and possibly missing the statute of limitations regarding items such as the identification of possible Defendants or additional causes of action, it is evident that Defendant's exercise of his 5th Amendment privilege is unnecessarily costly to the Plaintiff, thus warranting an attempt by this Honorable Court to seek out ways of permitting as much testimony as possible, despite Defendant's assertion of the privilege.

Simply put, the Plaintiff's family simply wants to know what happened to their son. To that end, Plaintiff's counsel has exercised due diligence in attempting to uncover the relevant facts through numerous requests. However, in response to those requests, Defendant has continued to actively mislead the Plaintiff with both inaccurate statements and inconsistent statements. As such, allowing the Plaintiff to depose the Defendant seems to be the "equitable treatment" which the Plaintiff is entitled to pursuant to <u>Graystone Nash, Inc.</u> Any further unreasonable delay and unfair prejudice incurred by the Plaintiff simply flies in the face of fairness.

It should also be noted that because of Defendant's repeated refusal to testify and invoke his 5th Amendment rights, Plaintiff is entitled to have an adverse inference drawn against Defendant. <u>Baxter</u>, 425 U.S. at 318 ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"); <u>see also</u> <u>U.S. v. Witmer</u>, 835 F.Supp. 208 (M.D. Pa. 1993) (refusal to testify creates an adverse inference in civil action).

even further, and possibly missing the statute of limitations regarding items such as the identification of possible Defendants or additional causes of action, it is evident that Defendant's exercise of his 5th Amendment privilege is unnecessarily costly to the Plaintiff, thus warranting an attempt by this Honorable Court to seek out ways of permitting as much testimony as possible, despite Defendant's assertion of the privilege.

Simply put, the Plaintiff's family simply wants to know what happened to their son. To that end, Plaintiff's counsel has exercised due diligence in attempting to uncover the relevant facts through numerous requests. However, in response to those requests, Defendant has continued to actively mislead the Plaintiff with both inaccurate statements and inconsistent statements. As such, allowing the Plaintiff to depose the Defendant seems to be the "equitable treatment" which the Plaintiff is entitled to pursuant to <u>Graystone Nash, Inc.</u> Any further unreasonable delay and unfair prejudice incurred by the Plaintiff simply flies in the face of fairness.

It should also be noted that because of Defendant's repeated refusal to testify and invoke his 5th Amendment rights, Plaintiff is entitled to have an adverse inference drawn against Defendant. <u>Baxter</u>, 425 U.S. at 318 ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"); <u>see also</u> <u>U.S. v. Witmer</u>, 835 F.Supp. 208 (M.D. Pa. 1993) (refusal to testify creates an adverse inference in civil action).

In no case cited by the Defendant, nor in any case that Plaintiff was able to find does it hold that the Defendants are entitled to the requested relief. The law is that if the Defendant does not want to answer a specific question he may assert his 5th Amendment privilege to specific questions and that the Court may draw an adverse inference from the same if he does.[1]

## IV.   CONCLUSION

WHEREFORE, Plaintiff respectfully requests this Honorable Court deny the Defendant's Motion for Stay.

>                         Respectfully submitted,
>
>                         Foley, McLane, Foley, McDonald & MacGregor, P.C.
>
>                         By:     /s/Kevin P. Foley
>                                 Kevin P. Foley, Esquire
>                                 Attorney I.D. No. 53067
>                                 600 Linden Street
>                                 P.O. Box 1108
>                                 Scranton, PA 18501-1108
>                                 (570) 342-8194

---

[1] The case law applicable here is as follows: Chambers v. Montgomery, 411 Pa. 355, 192 A. 2d 355, (1963)(court properly charged jury in civil proceeding that silence constituted an admission); Philadelphia v. Kenny, 28 Pa. Cmwlth. 531, 369 A.2d 1343 (1977) (refusal to testify is an admission of liability). Fitzpatrick v. Philadelphia, 389 Pa. Super. 430, app. denied, 577 A.2d 890, 525 Pa. 618 (failure to testify creates inference that testimony would be favorable to the other party). See also, Commonwealth v. Dollman, 518 Pa. 86, 541 A.2d 319 (1988) (flight or concealment has long been recognized as relevant and admissible as evidence to advance the inference of guilt), following Commonwealth v. Colson, 507 Pa. 440, 464-465, 490 A.2d 811, 823-824 (1985), cert. denied, 476 U.S. 1140 (1986); U.S. v. Witmer, 835 F.Supp. 208 (M.D. Pa. 1993) (refusal to testify creates adverse inference in civil action). In re Griffin, 456 Pa.Super. 440, 690 A.2d 1192 (Pa.Super.,1997)( Mr. Derzack was then properly informed by the court that, in a civil proceeding, a negative inference may be drawn when a witness invokes the Fifth Amendment privilege against self-incrimination (N.T. at 129). See Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) ( "Our conclusion is consistent with the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a party to a civil cause.' 8. J. Wigmore, Evidence 439 (McNaughton rev 1961)".); Delaware County Lodge No. 27 v. Township of Tinicum, 908 A.2d 362 (a party's failure to testify in a civil proceeding raises an inference that the testimony would be unfavorable to him, even though he was available to either side.); Eichman v. McKeon, 824 A.2d 305 (a party's failure to testify at a civil trial may raise an inference that the party's testimony would have been unfavorable to him.); Scott v. Com. Dept. of Transp. Bureau of Driver Licensing, 730 A.2d 539 (a party's failure to testify in civil proceeding can give rise to inference of fact that party's testimony would have been adverse or unfavorable to him. Failure to testify to facts within one's presumed knowledge permits inference that can erase equivocal nature of other evidence relating to disputed fact.)