**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANIEL ALLEN BYRAM, Administrator of the Estate and Natural Father of JOHNATHON BYRAM, deceased, | CIVIL ACTION NO. 3:10-CV-593 |
| Plaintiff | (JUDGE CAPUTO) |
| v. | |
| MARK T. RENEHAN, et al., | |
| Defendants | |

## MEMORANDUM

Defendant Joseph Connors moves for summary judgment on the negligence claims against him stemming from a RUV accident in which Johnathon Byram was killed. Mr. Connors argues that under Pennsylvania law, a passenger of a vehicle has no duty to a third person killed by the vehicle's driver. Plaintiff Daniel Allen Byram, decedent's father, argues for liability under three theories: (1) "concert of action"; (2)" substantial assistance"; or (3) the "Good Samaritan" doctrine. The Court does not agree with plaintiff and will grant Mr. Connors' motion.

## BACKGROUND

The underlying suit arises out of a tragic RUV accident which took place on Minkler Mountain Rd in Wayne County, Pennsylvania in the early morning of July 5, 2009. Johnathon Byram and Mr. Connors were staying at defendant Mark Renehan's parents' home over the Fourth of July weekend. Both Mr. Byram and Mr. Connors were nineteen at the time and minors under Pennsylvania law. After a night of drinking at the nearby home of Mr. Renehan's aunt and uncle, defendants Patricia and James Renehan, Mr. Renehan

told Mr. Byram and Mr. Connors he was ready to go back to his parents' house. The RUV they were taking belonged to Mr. Renehan's parents. Mr. Connors testified at his deposition that, as the three approached the RUV, he and Mr. Renehan helped guide Mr. Byram to the vehicle after he had slipped on the wet grass. Mr. Connors climbed into the back after losing a game of 'rock, paper, scissors' for the front seat. Mr. Connors testified that he then held out his hand to help Mr. Byram into the vehicle. Mr. Renehan drove. Along the way, the RUV flipped over. Mr. Byram, who was not wearing a seatbelt, was thrown from the vehicle and killed.

Daniel Allen Byram then filed a complaint on behalf of Johnathon on March 17, 2010 (Doc. 1), and an amended complaint, adding additional defendants, on October 14, 2011 (Doc. 109). The allegations against Mr. Connors are outlined in paragraph 94. Mr. Byram primarily alleges that Mr. Connors was negligent in placing Johnathon Byram into the RUV knowing Mr. Renehan was intoxicated and knowing that Johnathon was unable to take precautions, such as buckling his seatbelt, to protect himself.

Mr. Connors now brings a motion for summary judgment. The motion has been fully briefed and is ripe for review.

**LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

The Court will grant Mr. Connors' motion for summary judgment on the negligence claims against him because he did not owe a duty to Johnathon Byram.

"In order to hold a defendant liable for injuries sustained by a plaintiff, it must be shown that the defendant breached a duty or obligation recognized by the law, which required him to conform to a certain standard of conduct for the protection of persons such as the plaintiff." *Clayton v. McCullough*, 448 Pa.Super. 126, 129 (1996) (internal citation omitted). "Anglo-American common law has for centuries accepted the fundamental premise that mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act." *Clayton*, 449 Pa.Super. at 129 (citing *Elbasher v. Simco Sales Serv. of Pa.*, 441 Pa.Super. 397, 398-99 (1995)).

Absent a special relationship, joint venture, or right to control the vehicle, "[a] passenger does not owe a duty to a third-person where the driver of the vehicle is intoxicated, *particularly when passengers and the driver merely participate in the joint procurement and ingestion of alcohol*." *Brandjord v. Hopper*, 455 Pa.Super. 426, 431 (1997) (internal citation omitted) (emphasis added).[1]

---

[1] The *Brandjord* court justified this rule by finding that:

To impose a duty on a passenger making him liable to others for what the driver chooses to do is inappropriate; such a rule assumes, incorrectly, that a passenger somehow shares in the management of the vehicle and the driver is amenable to the passenger's influence. Even more troubling, however, is that such a duty would open a veritable Pandora's box of

Under well-established Pennsylvania law then, Mr. Connors, as a passenger in the RUV, had no duty to Johnathon Byram. In attempting to avoid this rule, Mr. Byram argues that Mr. Connors could be held liable under theories of: (1) "concert of action," (2) "substantial assistance," or (3) the "Good Samaritan" doctrine.

### A. "Concert of Action"

The "concert of action" theory is set forth in § 876(a) of the Restatement (Second) of Torts, which provides that: "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . .does a tortious act in concert with the other or pursuant to a common design with him." While this provision of the Restatement has not been formally adopted by the Pennsylvania Supreme Court, it is the framework usually employed by the lower courts in dealing with liability claims against motor vehicle passengers. *See, e.g., Brandjord*, 455 Pa.Super at 432. In *Welc v. Porter*, decedent's parents sued driver and passenger for negligence after driver struck decedent's vehicle, killing her. 450 Pa. Super. 112 (1996). Driver and passenger had both been drinking and were in a truck owned by driver's mother. Plaintiffs argued that passenger was liable under the "concert of action" theory. Since the only allegations were that driver and passenger had been drinking together and that the driver had driven negligently, the Pennsylvania Superior Court held that: the "facts do not present the type of situation where it can be said that the driver and passenger acted in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result." *Welc*, 450 Pa.Super. at 123.

---

potential liability and responsibility problems.

*Brandjord*, 455 Pa.Super. at 431.

5

Similarly here, Mr. Connors testified that Mr. Renehan, after a night of drinking with Mr. Connors and Johnathon Byram, told them he was ready to go back to his parents' home. They then got into an RUV owned by Mr. Renehan's parents and proceeded back to the parents' home when the accident occurred. The Court therefore finds there was no agreement between Mr. Renehan and Mr. Connors as to a line of conduct or a particular result. Mr. Renehan simply announced his intentions and Mr. Connors and Mr. Byram acquiesced.

### B. "Substantial Assistance"

Likewise, there are no facts that Mr. Connors "substantially assisted" in Mr. Byram's negligent conduct.

Under § 876(b) of the Restatement (Second) of Torts, a person can be liable for harm to a third party resulting from the tortious conduct of another if the individual, "knows that the other's conduct constitutes a breach of duty and gives *substantial assistance or encouragement* to the other so to conduct himself" (emphasis added). Again, in *Welc* the passenger was only alleged to have drank beer with the driver and rode with driver in a truck owned by the driver's mother. The Court concluded that plaintiffs could not recover under § 876(b) because there were no allegations the passenger substantially assisted or encouraged either driver's alcohol consumption or his negligent driving. Likewise here, Mr. Connors simply drank with Mr. Byram and rode in the RUV. He thus cannot be held liable under a "substantial assistance" theory.

### C. "Good Samaritan" Theory

Additionally, Mr. Connors is not liable under the "Good Samaritan" theory because

his "assistance" was of a minimal nature.

Under § 323 of the Restatement (Second) of Torts:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Additionally, under § 324 of the Restatement (Second) of Torts:

One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by

(a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or

(b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

These sections, collectively, are known as the "Good Samaritan" doctrine. *Filter v. McCabe*, 733 Pa.Super. 1274 (1999). In *Filter*, plaintiff was at a party at defendant's home and had been drinking. After everyone else had left, plaintiff fell, struck his head on the concrete floor of defendant's basement, and was rendered unconscious. Defendant revived plaintiff, but plaintiff could not respond to defendant's questions. Rather than call an ambulance or plaintiff's family, defendant put plaintiff on a couch and went to bed. The next morning plaintiff woke up and went home. Defendant called plaintiff's home to see that he was safe, spoke to plaintiff's wife but did not tell her about the fall. An hour later, defendant called again, this time telling the wife about the accident. Plaintiff's wife then went to wake him up. When she could not, she called the paramedics. Plaintiff ultimately underwent

emergency brain surgery and suffered permanent brain damage from the fall. Based on the facts of the case, the Superior Court of Pennsylvania held that the homeowner could be liable under §§ 323 and 324 of the Restatement. However, the facts here are distinguishable from *Filter*. The only help Mr. Connors testified to giving Johnathon Byram was guidance to the RUV after Mr. Byram had slipped on the grass and a hand to help Mr. Byram into the vehicle. His "assistance" was minimal. Additionally, while Mr. Byram had been drinking, he was able to walk to the RUV and play a game of "rock, paper, scissors" for the front seat. There is no evidence that Mr. Byram was in Mr. Connors care or that Mr. Connors ever assisted him other than in the most cursory fashion. Finding liability here would make the "Good Samaritan" exception to the principal of nonfeasance, a central pillar of the law of negligence, consume the rule.

## CONCLUSION

Mr. Connors' motion for summary judgment will be granted because a passenger in a vehicle cannot be held liable for the injuries or death of a third-person based on the negligence of the vehicle's driver. Additionally, there was no concerted action between Mr. Connors and Mr. Renehan; Mr. Connors did not substantially encourage Mr. Renehan's negligent conduct; and Mr. Connors did not undertake to assist or aid Mr. Byram.

An appropriate order follows.


 12/8/11                                                                    /s/ A. Richard Caputo
Date                                                                         A. Richard Caputo
                                                                             United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANIEL ALLEN BYRAM, Administrator of the Estate and Natural Father of JOHNATHON BYRAM, deceased, | CIVIL ACTION NO. 3:10-CV-593 |
| Plaintiff | (JUDGE CAPUTO) |
| v. | |
| MARK T. RENEHAN; THOMAS (a/k/a TODD) S. RENEHAN; BETH L. RENEHAN; JAMES RENEHAN; PATRICIA RENEHAN and JOSEPH CONNORS, Jr., | |
| Defendants | |

**ORDER**

   **NOW**, this ___8th___ day of December, 2011, **IT IS HEREBY ORDERED** that Defendant Joseph Connors' motion for summary judgment (Doc. 112) is **GRANTED**

 

       /s/ A. Richard Caputo
       A. Richard Caputo
       United States District Judge